The Chancellor.
The exceptions to the master’s report all relate to the subject of commissions. It is insisted that trustees are not entitled to compensation for services rendered in the performance of their trust: and again, if they are entitled to such compensation, the allowances made in this case are too large, and in other respects not proper. The rule of the common law is undoubtedly well established, “ that a trustee, executor, or administrator shall have no allowance for his care and trouble,” as it was laid down by Lord Talbot in Robinson v. Pitt, 3 P. Wms. 249. The Court of Chancery, independent of any statute law or local custom, has, with few exceptions, adopted this rule. In Sew Jersey the rule is different. Executors, administrators, guardians, and trustees are allowed compen *264 sation by statute, (Laws of A. Jersey 214, § 26,) and the principle upon which allowance is to be made is regulated by statute. The statute declares it shall be made with reference to their actual pains, trouble, and risk in settling the estate, rather than in respect to the quantum of estate. It is true, in the case of The State Bank at Elizabeth v. Marsh and Edgar (Sax. 288), the Chancellor declared the general principle to be well settled, that trustees are not entitled to compensation for services rendered in the performance of their trust, without adverting to the fact, that such rule did not prevail in this state. But in that case the interlocutory decree, upon which the master’s report was based, allowed commissions to the trustees: and in the same opinion, the Chancellor did not decide that the commissions should be disallowed, but he reduced them from six per cent., which was the amount allowed by the master, to four per cent. In the case of Jackson v. Jackson’s ex’s (2 G. C. R. 113), the same Chancellor expressly recognises the right and power of the court to make an equitable and just compensation to trustees for their services.
The only remaining question is, whether the allowances made by the master are proper ?
As to the allowance of $151.15 on $8023.11, I think it was properly made by the master, and that it is reasonable. The evidence was satisfactory to show, that at the attempt at settlement, on the 11th April, 1844, it was admitted that this was the amount of the trust fund in the hands of James B. Armstrong, one of the defendants, but it was not admitted that he then relinquished his claim to commissions. Nor can I see any propriety in his being required to do so. He had the management of the trust fund, which was by the will left very much to the discretion of the trustees for twenty years previous to that period, and the evidence shows that it was during that time of considerable trouble to him. It is true $100 of the fund was lost; but, under the circumstances, no court *265 would hold him responsible for the loss. His sister, the cestui que trust, was a married woman. The trustees, in the mode of investment, had consulted and followed the advice of the cestui que trust and her husband, and I think very properly. The loss was occasioned by the complicated arrangements in payment of property purchased for the cestui que trust, made by herself and husband. I do not think that the exceptant has any reasonable ground of complaint on account of this allowance.
The further sum of $81.27, allowed for the disbursements of the fund after the 11th of April, 1840, is a very moderate allowance, provided under the circumstances the trustee is entitled to anything.
The trust fund was originally in real estate. It was so left by the testator. He directed by his will, which created the trust, that the lands so devised should be managed and controlled in such way and manner as the three trustees, or a majority of them, should think best and most for the advantage of his daughter, the complainant, and either to rent or sell the same, or any part thereof. He directed that if sold, the proceeds should be invested “ in good landed security.” On the 11th of April, 1844, the fund, amounting then to $8028.11, was in tire hands of James 33. Armstrong. The bill charges, that the complainant then requested the defendants to invest the trust fund in the maimer directed by the will. If that fund has not been so invested during this long period, but the trustees have seen proper to permit it to remain in the hands of one of the trustees without any security, then they have violated their duty as trustees, and are not entitled to commissions. The commissions are a compensation for their faithful discharge of duty. Jackson v. Jackson’s ex’rs, 2 G. C. R. 113.
James 33. Armstrong states, in his answer, that the fund is invested. It does not appear there was any inquiry about the matter before the master. He simply states, in his report, that there was no evidence before him that the *266 fund was invested. There may be some misapprehension upon the subject, as I can hardly suppose the defendant would have alleged that the fund was invested, if it were not so. If the trustee desires an opportunity of showing that the fund' has been invested since 1844,1 will give him that opportunity; otherwise the commissions since the last named periodpnust be disallowed.
The defendants must pay the costs of the suit. The complainant has been driven into this litigation to establish the amount of the trust fund. The result shows that, independent of the commissions, the complainant is entitled to upwards of $600 more than the defendant, James B. Armstrong, the only one who has answered, admits to be due. If this discrepancy arose from an honest difference of opinion between the parties involving some principle proper for judicial inquiry, the litigation in such case ought not to be at the expense of the trustees. Such is not the case in the present instance. Upon authority, the defendants must pay the costs. Newton v. Bennet, 1 Bro. C. C. 359; Franklin v. Frith and others, 3 Bro. C. C. 433. On the ground, too, that the trustees did not invest according to the terms of the trust, they should be compelled to pay the costs. In Seers v. Hind, 1 Ves. 294, the Lord Chancellor says, “ "When I am obliged to give interest against executors as a remedy for a breach of trust, costs against them must follow of course.” And in Piety v. Stace, 4 Ves. jun. 620, the executor kept the fund, and used it for his own benefit contrary to his trust. He was decreed to pay interest and costs.